Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 6057 | **DATE** | 10/18/2001 |
| **CASE TITLE** | James Gordon Riley vs. Orthogenic School | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter MEMORANDUM, OPINION AND ORDER: The motion for summary judgment brought by the defendant, Orthogenic School is granted and the plaintiff's cross motion for summary judgment is denied. Judgment is entered in favor of the Orthogenic School on all counts. This case is terminated. This is a final and appealable order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | OCT 30 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TSA | courtroom deputy's initials | 01 OCT 29 PM 1:51 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
OCT 30 2001

JAMES GORDON RILEY, )
)
     Plaintiff, )
)
v. ) No. 99 C 6057
)
ORTHOGENIC SCHOOL, ) Wayne R. Andersen
) District Judge
     Defendant. )

## MEMORANDUM, OPINION AND ORDER

This case is before the Court on the cross motions for summary judgment filed by both the plaintiff, James Riley, and defendant University of Chicago Orthogenic School. For the following reasons, the defendant's motion for summary judgment is granted and the plaintiff's cross motion for summary judgment is denied.

## BACKGROUND

The facts are taken from the parties' statements of material facts filed pursuant to Local Rule 56.1. Plaintiff, James Riley, is an African-American male who began working at the Sonia Shankman Orthogenic School of the University of Chicago ("Orthogenic School") sometime in 1994. His job title throughout his tenure at the Orthogenic School was Housekeeping Assistant II. In that position, Riley's responsibilities included routine cleaning of school building facilities, changing linens, cleaning and mopping floors, making minor repairs to household furnishings, running errands for school administrators, and performing other related tasks that were assigned to him. While employed at the Orthogenic School, Riley



was a member of Local 743 of the International Brotherhood of Teamsters. The collective bargaining agreement between the union and the school contained a non-discrimination statement.

On July 10, 1998, Lafayette Linear, who was business director of the Orthogenic School and Riley's ultimate supervisor, informed Riley by letter that his employment with the school was being terminated for repeated violations of the school's absenteeism and call-in policy. Specifically, the undisputed evidence shows that, over a two year period, Riley was disciplined on at least four different occasions for violating the school's administrative policies. For example, on July 1, 1996, Riley was reprimanded for failing to promptly call his supervisor regarding car trouble that substantially delayed his arrival to work. On August 14, 1996, Riley was again reprimanded for failing to follow the school's established call-in policy for reporting unexpected absences from work. The next day, on August 15, 1996, Riley again failed to properly notify his superior that he would be absent from work. Because Riley committed three violations of the call-in policy within a two month period, he was suspended from work for three days. The next violation took place on November 20, 1997. According to the Notice of Corrective Action included in the record, Riley was suspended from work for one day because he unexpectedly left work, without notifying his supervisor, before his shift had ended. Additionally, the record indicates that Riley repeatedly violated school policy by refusing to begin his shift by punching the time clock each morning.

All of these events serve as prologue to what transpired in July of 1998. Defendant argues that, on July 8, 1998, Riley again did not promptly arrive for work and he did not personally alert his supervisor Linear about his impending absence as required by the school's

call-in policy. Subsequently, the record is clear that Riley did not appear for work on either July 9 or July 10. As a result, defendant argues that Linear discharged Riley from his position as a housekeeping assistant with the Orthogenic School on July 10, 1998 because of repeated violations of the school's absenteeism and call-in policy.

Of course, plaintiff offers a very different explanation for why he was ultimately fired by the Orthogenic School. In response to the disciplinary actions prior to July 1998, Riley admits that he did not contact his supervisor concerning his absences but instead left word with his co-workers about the need to be absent from work on those occasions. However, plaintiff argues that the ultimate reason for his discharge in July, 1998 was because he had filed a complaint with the Equal Employment and Opportunity Commission ("EEOC") alleging racial and sex discrimination as well as sexual harassment.

Plaintiff claims he was subjected to pervasive discrimination and harassment during his tenure at the Orthogenic School. He claims that a co-worker by the name of Frank Lelo directed certain racially derogatory comments toward him. Specifically, Riley contends that Lelo made the comment "rock, paper, blow," which allegedly refers to the sale and distribution of cocaine in certain African-American communities in the city of Chicago, and that Lelo brought a confederate flag into the workplace. Further, Riley alleges that Lelo and his group leader, Bettye Dorsey, engaged in repeated sexual harassment. For example, Riley claims that Dorsey on different occasions would expose herself in front of him and then ask him to engage in sexual intercourse. Additionally, Riley alleges that, on different occasions, Lelo would press himself against the plaintiff in an inappropriate manner and ask him sexually explicit questions.

3

According to his papers, Riley made numerous verbal complaints regarding these allegedly discriminatory and harassing actions to his supervisors and to his group leader (who interestingly is the same person he is accusing of sexual harassment). However, it is undisputed that, prior to July, 1998, Riley never filed a written grievance with either the university or with his labor union. In fact, it was not until July 8, 1998 that Riley first committed his allegations to writing. On that date, Riley filed a written complaint with the EEOC alleging racial and sex discrimination. On July 17, 1998, Riley amended his EEOC complaint to include a charge of retaliatory discharge.

Approximately a year later, the EEOC issued a right to sue letter and the plaintiff filed the instant law suit against the Orthogenic School. Riley has decided to pursue this case on a *pro se* basis. For the purposes of the remainder of this opinion, we will group plaintiff's allegations against the Orthogenic School into three categories. Count I consists of Riley's claim that the defendant engaged in racial and sex discrimination in violation of Title VII of the Civil Rights Act of 1964. Count II consists of Riley's claim that he was discharged in retaliation for pursuing his allegations of discrimination and harassment against the defendant. Count III consists of Riley's claim that the alleged sexual harassment created a hostile work environment in violation of Title VII of the Civil Rights Act of 1964.

## DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions of file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment carries the initial burden of

demonstrating an absence of evidence to support the position of the non-moving party. *Doe v. R.R. Donnelley & Sons, Co.*, 42 F.3d 439, 443 (7th Cir. 1994). The non-moving party must then set forth specific facts showing there is a genuine issue of material fact and that the moving party is not entitled to judgment as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252, 106 S.Ct. 2505 (1986). A genuine dispute about a material fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S.Ct. 2548 (1986).

In making this determination, the Court must draw every reasonable inference from the record in the light most favorable to the non-moving party and should not make credibility determinations or weigh evidence. *Association Milk Producers, Inc. v. Meadow Gold Dairies, Inc.*, 27 F.3d 268, 270 (7th Cir. 1994). The non-moving party must support its contentions with admissible evidence and may not rest upon mere allegations in the pleadings or conclusory statements in affidavits. *Celotex*, 477 U.S. at 324. The plain language of Rule 56(c) mandates the entry of summary judgment against a party who fails to establish the existence of an element essential to its case and on which that party will bear the burden of proof at trial. The production of only a scintilla of evidence will not suffice to oppose a motion for summary judgment. *Anderson*, 477 U.S. at 252. Employment discrimination cases, while often turning on factual questions, are nonetheless amendable to summary judgment when there is no genuine dispute of material fact or there is insufficient evidence to demonstrate the presence of the alleged motive to discriminate. *Cliff v. Board of School Comm'r*, 42 F.3d 403, 409 (7th Cir. 1994).

As mentioned above, the plaintiff in this case is proceeding *pro se*. In this Circuit, *pro*

5

*se* litigants are "entitled to a more liberal pleading standard . . . and must receive proper notice regarding the meaning and consequences of a summary judgment motion." *Henderson v. Sheahan*, 196 F.3d 839, 845-46 (7th Cir. 1999); *see also Lewis v. Faulker*, 689 F.2d 100 (7th Cir. 1982). However, this treatment does not excuse a *pro se* litigant from adhering to the dictates of the Federal Rules of Civil Procedure. *See Members v. Paige*, 140 F.3d 699, 702 (7th Cir. 1998). In the case at bar, plaintiff's submissions in response to the defendant's motion for summary judgment come very close to violating Local Rule 56.1 because he has not properly authenticated the documents he relies upon, and he has neglected to attach certain depositions he cites as substantiation for his arguments. This is true despite the volume of seemingly irrelevant documents plaintiff has decided to attach to his papers. Nevertheless, we have diligently evaluated all of the evidence that has properly been presented to this Court.

## I. Plaintiff Cannot Establish Race or Gender Discrimination

As a preliminary matter, defendant first contends that plaintiff's EEOC charge does not encompass all of the actions raised in the complaint filed in this Court, and, therefore, we do not have jurisdiction to hear those particular claims. As the Seventh Circuit has stated, "a Title VII plaintiff cannot bring claims in a lawsuit that are not included in [his] EEOC charge. . .For allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would frustrate the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge." *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). In the two complaints Riley filed with the EEOC, he only identified race and sex as the bases for the discrimination he allegedly suffered. However, in the complaint he filed in this Court, Riley additionally alleged discrimination on the basis of color

6

and age. As the Seventh Circuit has instructed, the plaintiff cannot raise these additional charges without having first presented them to the EEOC. That being said, we also note that plaintiff is not entitled to the protections afforded by the Age Discrimination in Employment Act because the protected age class is age forty and above (plaintiff is thirty-six). *See* 29 U.S.C. § 621 *et seq*. Therefore, we will not address the plaintiff's color and age discrimination claims as they are not properly before this Court, and, instead, we will focus our attention on his allegations of race and sex discrimination.

To prove discrimination using the indirect, burden-shifting method outlined by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 92 S.Ct. 1817 (1973), the legal principles are well-settled, as the Seventh Circuit recently confirmed:

> First, plaintiff must make out a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. Where a plaintiff alleges discriminatory treatment, he must demonstrate that (1) he belongs to a protected class; (2) he performed his job satisfactorily; (3) he suffered an adverse employment action; and (4) his employer treated similarly-situated employees outside of his protected class more favorably. *Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 347 (7th Cir. 1997); *Lenoir v. Roll Coater, Inc.*, 13 F.3d 1130, 1132 (7th Cir. 1994). Once a plaintiff has made this showing, there is a presumption that he was discriminated against, and the employer must come forward with a legitimate, non-discriminatory reason for the employment action. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Lenoir*, 13 F.3d at 1133. At this stage, the employer need not prove that it was actually motivated by the proffered reason. Rather, an employer "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 257, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Once the defendant meets this burden of production, the plaintiff must prove by a preponderance of the evidence that the reason offered by the defendant is merely pretext for discrimination. *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089; *Plair*, 105 F.3d at 348.

*Stockett v. Muncie Indiana Transit Sys.*, 221 F.3d 997, 1001-01 (7th Cir. 2000). In *Reeves v.*

*Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 2106 (2000), the Supreme Court recently confirmed that, under the *McDonnell Douglas* framework, "the ultimate burden of persuading the trial of fact that the defendant intentionally discriminated against the plaintiff *remains at all times with the plaintiff.*" (Emphasis added.)

After reviewing all of the plaintiff's properly authenticated documents and making every reasonable inference in his favor, we find that Riley has made a *prima facie* case of employment discrimination on the basis of race and sex. The first and third elements of a *prima facie* case have obviously been satisfied here. As for the second requirement that the plaintiff must have been performing his job in a satisfactory manner, the evidence in the record suggests that, other than numerous violations of the Orthogenic School's call-in and absenteeism policy, Riley's on the job performance of his housekeeping responsibilities was satisfactory. Further, as to the fourth requirement for a *prima facie* case, we feel the plaintiff has made the requisite showing that the Orthogenic School treated similarly-situated employees more favorably than it treated him. Riley has presented evidence, in the form of his own sworn affidavit, that he was asked to perform certain menial tasks, such as electrical work, carpentry, plumbing, and asbestos removal, that were not required of other employees who also served as housekeeping assistants. Additionally, with respect to purported sex discrimination, Riley alleges he was forced to place his personal belongings in the garbage room or janitorial closet because there was no locker room facilities similar to those provided for female housekeeping staff.

However, a finding that the plaintiff has made his *prima facie* case does not end the inquiry. At this point, under the *McDonnell Douglas* regime, the burden shifts to the

employer to provide a legitimate, non-discriminatory rationale for the dismissal. According to the defendant, the reasons for the plaintiff's dismissal from the Orthogenic School were his persistent disregard for the school's absenteeism and call-in policy coupled with his penchant for handwriting his start time on his timecard as opposed to using the time clock. This explanation is further supported by the affidavit of Lafayette Linear which states that, prior to his decision on July 10, 1998 to terminate Riley's employment, he was unaware that Riley had filed his complaint with the EEOC alleging race and sex discrimination, and that the sole reason for Riley's discharge was his repeated violations of administrative policy. This is compelling evidence that the employment decision in question was not motivated by "discriminatory animus." *Burdine*, 450 U.S. at 257.

Since the Orthogenic School has provided a non-discriminatory reason for Riley's discharge, plaintiff must next advance some evidence that the school's explanation has been motivated by pretext. Pretext under the *McDonnell Douglas* burden-shifting method of proof does not mean a mistake, but "a phony reason for some action." *Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995). Riley must show that the Orthogenic School's reason for discharging him was unworthy of credence. *See Reeves*, 530 U.S. at 143. That is, Riley must produce "'evidence tending to prove that the employer's proffered reasons are factually baseless, were not the actual motivation for the discharge in question, or were insufficient to motivate the discharge.'" *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 888-89 (7th Cir. 2001) (quoting *Adreani v. First Colonial Bankshares Corp.*, 154 F.3d 389, 395 (7th Cir. 1998)).

In this case, Riley has failed to meet his burden to produce evidence demonstrating

9

pretext. Instead of offering evidence tending to suggest that the rationale for his discharge offered by the school is factually baseless, Riley relies on conjecture and circular reasoning. According to the plaintiff, the school's explanation for why his discharge was not based on race or sex discrimination must be pretextual simply because Riley claims he was discriminated against based on race and sex. In this Circuit, this type of conclusory argument, without relevant evidence to support it, is insufficient to establish pretext. *Id.* Accordingly, even if Riley is correct that he was subjected to repeated racial and sex based actions by his fellow employees, the fact that the school administration has adhered to its stated absenteeism and call-in policy is a valid and uncontroverted reason for the discharge. Therefore, we grant summary judgment in favor of the Orthogenic School on Riley's claims of race and sex discrimination.

## II. Plaintiff Cannot Establish Retaliation

Title VII makes it unlawful "for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a) (West 1998). In order to establish a *prima facie* case of retaliation, a plaintiff must show that (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment decision; and (3) there is a causal link between the discharge and protected activity. *See Logan v. Kautex Textron North America*, 259 F.3d 635, 640 (7th Cir. 2001); *McKnight v. Chicago Housing Authority*, 2001 WL 987885, at *7 (N.D. Ill. Aug. 23, 2001). If Riley succeeds at establishing a *prima facie* case, the Orthogenic School must provide a non-discriminatory reason for its conduct, which, if unrebutted by Riley, would compel a grant of summary judgment in the school's favor. *See Rennie v. Dalton*, 3 F.3d

1100, 1108-09 (7th Cir. 1993). Riley cannot meet this burden because he cannot establish the third element of his *prima facie* case.

According to the sworn evidence provided by the defendant, it is clear that Lafayette Linear was unaware that Riley had filed his complaint with the EEOC prior to his decision to discharge the plaintiff on July 10, 1998. (*See* Linear Affidavit at 2.) Logically, it would be impossible for Linear to retaliate against Riley for filing an EEOC complaint if Linear was never cognizant of the fact that Riley had ever filed it. As for the allegations that certain racially derogatory comments were directed toward Riley, the evidence again shows there is no causal connection between the plaintiff's discharge and his decision to register verbal complaints against Frank Lelo, the offending individual. In fact, the record indicates that, in reality, the opposite is true. In his affidavit, Linear indicated that he took Riley's concerns about Lelo's allegedly derogatory comments very seriously. Linear confronted Lelo (who denied making the comment) and advised him again about the school's non-discrimination and non-harassment policy. (Linear Affidavit at 2.) This action suggests an honest effort to create a work environment that was free from discrimination and harassment rather than evidence of potential retaliation against Riley.

The plaintiff has attempted to counter the evidence in the record that Linear was unaware of his decision to file a complaint with the EEOC prior to the decision to discharge him on July 10, 1998. Specifically, Riley alleges he personally informed Bettye Dorsey of his intent to file with the EEOC on July 7, 1998, and that he had been informed, through undisclosed sources, that Dorsey had told Linear about the impending complaint. While we will accord Riley's recollection of his personal conversation with Dorsey every reasonable

11

inference, we cannot give similar treatment to his hearsay evidence that Dorsey in fact relayed the news of the complaint to Linear. According to the Seventh Circuit, "evidence relied upon [by the District Court] must be competent evidence of a type admissible at trial. Thus a party may not rely upon inadmissible hearsay in an affidavit or deposition to oppose a motion for summary judgment." *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996); *see also Minor v. Ivy Tech State College*, 174 F.3d 855, 856 (7th Cir. 1999). Accordingly, we must rule that Riley has failed to offer competent evidence to contradict the defendant's position that it was unaware of the July 8 EEOC complaint when it decided to discharge Riley on July 10. Therefore, Riley has failed to make a *prima facie* showing of a causal connection between his complaint and his discharge, and, thus, the Orthogenic School is entitled to judgment as a matter of law on Count II.

### III. Plaintiff Was Not Subjected To A Hostile Work Environment

Riley's claim of sexual harassment fails because he cannot demonstrate that he was subjected to a hostile work environment. In order to establish a *prima facie* case of hostile environment sexual harassment, a plaintiff must show that: (1) he was subjected to unwelcome sexual harassment in the form of sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature; (2) the harassment was based on sex; (3) the sexual harassment had the effect of unreasonably interfering with the plaintiff's work performance in creating an intimidating, hostile, or offensive working environment that affected seriously the psychological well-being of the plaintiff; and (4) there is a basis for employer liability. *See Parkins v. Civil Constructors of Illinois, Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998); *Rennie*, 3 F.3d at 1107. Thus, "not all workplace conduct that may be described as 'harassment' affects

a 'term, condition or privilege' of employment within the meaning of Title VII." *Mentor Savings Bank v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399 (1986). Rather, for sexual harassment to be actionable, it "must be sufficiently severe or pervasive to make the workplace intolerable for the members of the group discriminated against." *Minor*, 174 F.3d at 857.

In determining whether the workplace environment is hostile to the point of giving rise to a Title VII claim, courts must consider all of the circumstances and context in which the alleged conduct occurred, including "the frequency of the discriminatory conduct; its severity, whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367 (1993). These factors are evaluated not only from the plaintiff's subjective view, but also from a reasonable person's objective view. *Id.* at 21.

While there is evidence that Riley was subjected to occasional off-color or sexually suggestive comments that made his working environment uncomfortable (thus satisfying at least two of the elements of a *prima facie* sexual harassment case), nevertheless, we are compelled to grant summary judgment to the defendant because there is absolutely no evidence to form a basis for employer liability. As the Seventh Circuit has instructed, an employer's "liability for hostile environment sexual harassment depends upon whether the harasser is the victim's supervisor or merely a co-employee." *Parkins*, 163 F.3d at 1032 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275 (1998)). If the harasser is a supervisor and the victim suffered a tangible employment action, then the employer is strictly liable, although

there is the possibility of an affirmative defense. *Id.* However, because employers do not "entrust co-employees with any significant authority with which they might harass a victim, employers are liable for a co-employee's harassment only 'when they have been negligent either in discovering or remedying the harassment.'" *Id.* (quoting *Perry v. Harris Chernin, Inc.*, 126 F.3d 1010, 1013 (7th Cir. 1997)). An employer's legal duty in co-employment harassment cases will be discharged if it takes "reasonable steps to discover and rectify acts of sexual harassment of its employees." *Id.*

In this case, therefore, a threshold issue that needs to be addressed is whether the individuals the plaintiff has accused of harassment are either supervisors or simply co-employees. As to Frank Lelo, Riley has admitted in his briefs that Lelo's status is that of a co-worker. However, there is a dispute between the parties as to the status of Bettye Dorsey. Riley claims that Dorsey served not only as his team/group leader but also as a direct liaison between the housekeeping staff and Lafayette Linear. The Orthogenic School, on the other hand, argues that Dorsey was a "group leader" who "assisted management only in parceling out some work assignments but lacked the normal indicia of supervisory status . . . ." (Defendant's Motion for Summary Judgment at 10.)

To resolve this issue, we again turn to the Seventh Circuit's seminal decision in *Parkins*. There, the court determined what kind of authority an individual must possess in order to be considered a true supervisor for the purposes of Title VII liability. The court held that:

> "it is manifest that the essence of supervisor status is the authority to affect the terms and conditions of the victim's employment. This authority primarily consists of the power to hire, fire, demote, promote, transfer, or discipline an employee. Absent an

14

entrustment of at least some of this authority, an employee does not qualify as a supervisor for purposes of imputing liability to the employer."

*Parkins*, 163 F.3d at 1034. Applying this standard to the present case, it is evident that Dorsey was not a supervisor for purposes of imposing strict liability on the Orthogenic School under Title VII. The record is clear that the school did not invest Dorsey with the authority to hire, fire, or discipline Riley or his fellow employees on the housekeeping staff. In fact, as the defendant has stated, Dorsey's role with the school was more administrative than supervisory. She was responsible for making sure that certain duties or tasks were assigned, but she was not ultimately responsible for making sure the tasks were done accurately or completely. She did not have the authority to fire or reprimand any employee in the housekeeping department. Rather, that authority resided in Linear, who served as the school's business director and Riley's ultimate supervisor. Without the ability to hire and fire, Dorsey is simply another co-employee under the law of this Circuit.

Given then that this is a case of co-employee harassment, the defendant is liable under Title VII only if it has been negligent either in discovering or remedying the harassment. *See Parkins*, 163 F.3d at 1035. An employer's legal duty in co-employee harassment cases will be discharged "if it takes reasonable steps to discover and rectify acts of sexual harassment by its employees." *Id.* Thus, notice or knowledge of the harassment is a prerequisite for liability. *Id.*; *see also Perry*, 126 F.3d at 1014. In determining whether an employee had notice of harassment, a district court must determine whether the employer has "designated a channel for complaints of harassment." *Id.* (citing *Young v. Bayer Corp.*, 123 F.3d 672, 674 (7th Cir. 1997)). If an individual or department has been designated by the employer as "point person"

15

to receive complaints of harassment, then "this person [or department] becomes the natural channel for the making and forwarding of complaints, and complainants can be expected to utilize it in the normal case." *Young*, 123 F.3d at 674. With respect to the extent of notice provided to an employer, a plaintiff "cannot withstand summary judgment without presenting evidence that [he] gave the employer enough information to make a reasonable employer think there was some probability that [he] was being sexually harassed." *Parkins*, 163 F.3d at 1035 (quoting *Zimmerman v. Cook County Sheriff's Dep't.*, 96 F.3d 1017, 1019 (7th Cir. 1996)).

The defendant has presented facts sufficient to establish that it upheld its legal duty in this case. For example, both parties agree that the University of Chicago had at all relevant times a comprehensive policy designed to combat sexual harassment in the workplace. According to the affidavit of Aneesah Ali, Assistant Provost and director of the affirmative action office for the University of Chicago, anyone wishing to register a complaint of sexual harassment could do so with the affirmative action office, complaint advisors identified in the school's sexual harassment publication, the Office of Employee/Labor Relations, or a supervisor in the particular school, department or unit. (Ali Affidavit at 1.) Additionally, a summary of the school's sexual harassment reporting policy is included in the University of Chicago Employee Handbook, which Riley has admitted receiving.

Further, the record is replete with sworn testimony which indicates that Riley did not avail himself of the established school policy designed to address claims of sexual harassment. As his ultimate supervisor, Linear was a easily identifiable individual who Riley could have approached to air his sexual harassment allegations. However, the undisputed evidence is that Riley "never complained to [Linear] about sexual harassment." (Linear Affidavit at 1.)

16

Particularly telling is the affidavit of Ali which states that "[a]t no time during my tenure . . . did James Riley complain to either me or the sexual harassment complaint advisors listed in the sexual harassment brochure. . . I also conducted a review of files in my office preceding my tenure there and determined that no complaint had been filed with the office then either." (Ali Affidavit at 1.) This is compelling evidence that the Orthogenic School was never given notice of any sexual harassment occurring within its walls.

Riley, on the other hand, argues that he in fact did give his employer notice of the on-going sexual harassment, but that he did not follow the procedures outlined in the sexual harassment brochure. Instead, he claims that he verbally complained to his group leader, "supervisor," "director," "assistant director," "union representative," "union steward," and "EEOC." We find these arguments unpersuasive. It is true that the plaintiff has offered a laundry list of individuals he allegedly notified about the harassment. However, Riley does not define for the Court who these individuals are, nor has he submitted an affidavit from any of these individuals as evidence to substantiate his position. Is the "supervisor" Lafayette Linear? Who is the "director" and "assistant director" and what department(s) do they direct? Additionally, Riley provides no information in his own affidavit as to when he made these complaints or what the substance of the complaints were. Simply alleging that he notified unnamed individuals about the harassment, without more, is insufficient to generate a genuine issue of material fact. Therefore, we will grant summary judgment because we find the Orthogenic School incurred no Title VII liability because it was never properly notified about the harassment allegedly taking place amongst its employees.

## IV. Plaintiff's Cross Motion for Summary Judgment

We will briefly address what amounts to the plaintiff's cross motion for summary judgment. As an initial matter, we note that Riley's memorandum in support of his motion is virtually identical to the one submitted by the defendant in support of its motion. In fact, it appears that Riley has copied the defendant's motion verbatim except for a few factual differences. While this alone does not mandate denial of his motion, the lack of any meaningful legal and factual analysis does. For the numerous reasons discussed above, the plaintiff has failed to show that he is entitled to a judgment as a matter of law on his claims of discrimination, retaliation, and sexual harassment. Therefore, his motion for summary judgment is denied.

## CONCLUSION

The motion for summary judgment brought by the defendant Orthogenic School is granted and the plaintiff's cross motion for summary judgment is denied. Judgment is entered in favor of the Orthogenic School on all counts. This case is terminated. This is a final and appealable order.

It is so ordered.

/ Wayne R. Andersen
United States District Judge

Dated: October 18, 2001